HENDERSON v. DAY ENGINEERING CONSULTANTS
2024 OK CIV APP 25
Case Number: 121534
Decided: 10/09/2024
Mandate Issued: 11/07/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2024 OK CIV APP 25, __ P.3d __

 

SCOTT HENDERSON and JUDAH RENTALS, LLC, Plaintiffs,

GLENDALE APARTMENTS LLC, Plaintiff/Appellant,
v.
DAY ENGINEERING CONSULTANTS and CORBIN SWAIN, Defendants/Appellees.
AMERICAN PROPERTY INSURANCE COMPANY, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, DISTRICT JUDGE

REVERSED AND REMANDED

Adam Engel, Zachary Housel, MANSELL & ENGEL, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Rachel C. Mathis, Roger Gasset, ASTON, MATHIS, CAMPBELL, PLLC, Tulsa, Oklahoma, for Defendant/Appellee

GREGORY C. BLACKWELL, JUDGE:

¶1 Plaintiff (Glendale Apartments LLC) appeals the district court's order granting defendants' (Day Engineering Consultants and Corbin Swain), motion to dismiss plaintiff's negligence claim. Upon review, we find that the court improperly granted defendants' motion to dismiss and reverse and remand for further proceedings.

BACKGROUND

¶2 The Glendale Apartments sustained damage as a result of impact from an automobile. The apartment complex consists of three closely situated buildings. The automobile struck the westernmost building--Building A. As a result of the incident, plaintiff filed an insurance claim with their carrier, American Property Insurance Company ("APIC").

¶3 APIC retained defendant Day Engineering to determine the extent of the structural damage attributable to the vehicle impact and to provide general repair recommendations for the damage caused. On February 20, 2020, defendant Swain, who is an engineer as well as the president of Day Engineering, arrived at the complex to inspect the building. Plaintiff had also hired James Prather, a public adjuster, to inspect the damage. Prather met Swain at the property, although the parties characterize their interactions and relationship to each other quite differently.

¶4 Throughout Swain's examination of Building A, he identified various unsafe and dangerous conditions in the other two buildings. Swain reported the unsafe conditions he observed to the City of Oklahoma City. Swain, via Day Engineering, also prepared a report of findings from his inspection which was sent to APIC.

¶5 Later, on February 27, 2020, the fire marshal issued an "All Work Operations Stopped" notice to plaintiff for the Glendale Apartments, citing unsafe conditions, unsafe buildings, and abatement. Ultimately, this led to all three apartment buildings closing. As a result of this closure, plaintiff alleges that city officials forcefully removed tenants from their homes, leaving them with nowhere to go.

¶6 On May 29, 2020, Glendale Apartments LLC, Judah Rentals LLC

STANDARD OF REVIEW

¶7 "A motion to dismiss for failure to state a claim upon which relief can be granted may not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the stated claim for relief." National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc., 1997 OK 36946 P.2d 662Wilson v. State ex rel. State Election Bd., 2012 OK 2270 P.3d 155Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158

¶8 However, when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. 12 O.S. 2012(B). Both plaintiff and defendants attached a variety of materials to their motions. If exhibits are attached to a § 2012(B)(6) motion, then the nature of the information must be examined for matters outside of the pleadings presented in support of the motion, and whether these matters convert the motion into one for summary judgment.

¶9 Section 2012(B)(6) states that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment." The court, in granting the motion to dismiss did not indicate that it relied on any of the additional materials. Additionally, there are no court orders, hearing transcripts, or other evidentiary materials in the record indicating that the trial court gave the parties a "reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment," or any record that the summary judgment procedure and rules were used.

¶10 The appellate court will not treat a motion to dismiss as one for summary judgment where the parties were neither put on notice of the action nor given an opportunity to present applicable material, and where there is no indication that the trial judge considered material outside the pleadings. Carista v. Valuck, 2016 OK CIV APP 66394 P.3d 253

ANALYSIS

¶11 The plaintiff's petition in error contains twenty different allegations of error made by the trial court in granting the motion to dismiss. While the court did not identify a specific basis for granting the motion, the plaintiff's only cause of action against the defendants was negligence. Defendants argued in their motion to dismiss that plaintiff's negligence claim failed as a matter of law because they did not owe a duty to the plaintiffs under Oklahoma law and that Swain could not be held personally liable because his conduct was within the scope of his role as a member and manager of Day Engineering. Because the trial court dismissed the case against both Day Engineering and Swain personally, it is clear that the trial court found that the plaintiffs' negligence claim against both defendants failed as a matter of law. Therefore, upon review, the only issue before this Court is whether that decision was error. We find that it was.

¶12 In support of their argument that they owed no duty to the plaintiff, defendants first cite to Oklahoma Supreme Court case Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC, 2014 OK 106341 P.3d 75Trinity, Trinity Baptist Church purchased an insurance policy for its property from Brotherhood Mutual Insurance Company. Id. ¶ 2. Trinity sustained significant damage during a winter storm and filed a claim with Brotherhood. Id. Brotherhood later retained Sooner Claims Services, Inc. as an independent adjuster to investigate Trinity's claim. Id. ¶ 3. Under their agreement with Brotherhood, Sooner was not to make coverage commitments to the insured, not to send written correspondence to the insured, and to personally inspect the losses and provide a descriptive report if a loss was possibly not covered so that a Brotherhood adjuster could determine whether or not coverage was necessary. Id. All parties agreed that Sooner had no authority to make any coverage determinations regarding the property and that Sooner's evaluations and estimates of damages were to be directly submitted to Brotherhood. Id. ¶ 4. Trinity eventually brought an action for negligence against Sooner. Id. ¶ 5.

¶13 In analyzing Trinity's negligence claim, the Court specifically found that:

A majority of courts in other states have held that an insured cannot maintain a separate tort action for negligence against an independent insurance adjuster hired by the insurer because the independent adjuster owes the insured no duty of care. A minority of state courts take the opposite position and have determined that in similar factual circumstances an independent adjuster does owe a duty of care to the insured to not be negligent in its investigation or adjustment of claims.

Id. ¶ 23. Trinity encouraged the Court to adopt the minority viewpoint that an independent insurance adjuster hired by the insurer may owe a duty of care to the insured. For this assertion, Trinity relied on Brown v. State Farm, 2002 OK CIV APP 10758 P.3d 217may owe a duty of care to the insured. Trinity, 2014 OK 106

¶14 Instead, the Trinity Court adopted the view endorsed by a majority of the states as well as some federal district courts in Oklahoma, expressly abrogating Brown. Id. ¶ 26. In reaching that decision, the Court first examined Wallace v. Allstate Ins. Co., No. CIV-12-0310-HE, 2012 WL 2060664, (W.D. Okla. June 7, 2012) which held that under Oklahoma law, an independent insurance adjuster hired by an insurer to investigate a claim does not owe a duty to the insured to conduct a fair and reasonable investigation. Id. The Wallace court noted an important distinction between the parties in its case versus those in Brown: "Brown concerned an architect, bond counsel, and accounting firm, all of whom were highly skilled professionals who could reasonably expect third parties to rely upon their work." Id. at *1. The Wallace court found that different circumstances apply where insurance adjusters are concerned, holding:

In the context of an insurance claim, it is the insurer that contractually controls the responsibilities of its adjuster and retains the ultimate power to deny coverage or pay a claim. Subjecting adjusters to potential tort liability from insureds could create conflicting loyalties with respect to the adjusters' contractual obligations, given that insureds and insurers often disagree on the extent of coverage or the amount of damages.

Id. at *2 (quoting Hamill v. Pawtucket Mut. Ins. Co., 179 Vt. 250, 892 A.2d 226, 257 (2005)) (cleaned up). Ultimately, the Trinity Court found that although Brown correctly indicated that "lack of contractual privity" is not a bar to the existence of a legal duty for purposes of negligence, the Wallace court correctly determined that "public policy and other factors besides foreseeability counsel against imposing a legal duty to the insured with regards to negligence." Id. at ¶ 26.

¶15 Plaintiff argues that the present case is distinguishable from the case cited above because Swain is not an independent insurance adjuster; rather, he is a professional engineer. Plaintiff notes that Trinity and Wallace carved out an exception to pursue "professionals" such as architects and accounting firms for negligent work on insurance claims. Plaintiff argues that Swain does not know anything about insurance, does not understand insurance coverage, and does not review insurance policies. Doc. 10, Plaintiff's Response to Defendant's Motion to Dismiss, pg. 10. Therefore, a negligence action against him should be able to proceed.

¶16 However, it appears other courts have since extended Trinity's ruling to bar negligence claims regardless of whether the individual was specifically identified as an adjuster. See Faith Temple, Inc. v. Church Mut. Ins. Co., CIV-20-13-G, 2020 WL 4274582, at *1 (W.D. Okla. July 24, 2020); Jonnada v. Liberty Ins. Corp., No. CIV-19-456-D, 2019 WL 6119233, at *3 (W.D. Okla. Nov. 18, 2019). In Faith Temple Inc., the plaintiff was a property owner in Norman, whose property suffered damage during a storm. Faith Temple, Inc, 2019 WL 6119233, at *1. Plaintiff submitted a claim with its insurer, defendant Church Mutual, who in turn hired defendant Holliday, a licensed professional engineer, to "investigate" the damage and "consult with Defendant Church Mutual on coverage." Id. The plaintiff eventually brought a negligence claim against Holliday, arguing that it was not foreclosed by Trinity and by the persuasive authority of Jonnada Id. at *3. However, the court noted:

Jonnada and other decisions have extended Trinity Baptist Church to bar negligence claims against third parties regardless of whether they were identified as 'adjusters' or otherwise. See, e.g., Jonnada, 2019 WL 6119233, at *2 (identifying the engineers hired by the insurer as "third-party consultant[s]" who were hired "to investigate and evaluate the damage" to the insured property.); Hightower v. USAA Cas. Ins. Co., No. 16-CV-274-JED-FHM, 2017 WL 1347689, at *2 (N.D. Okla. Apr. 7, 2017) (finding that it was irrelevant whether the third party was an adjuster or an appraiser "because the reasoning in Trinity Baptist, although it pertained to an independent insurance adjuster, is broadly worded and the same policy concerns are applicable here").

Id. We find the reasoning of these cases to be persuasive and hold that third-party consultants hired to investigate, evaluate, or otherwise assess damage on behalf of an insurance company cannot be held liable by an insured for negligence for work performed on the claim.

¶17 However, these cases differ from the present case in that the work performed by the professionals in Trinity, Jonnada, and others was a part of the work done for the insurer for the claim. Here, it is alleged that Swain's report to the city went beyond his charge to assess damage sustained as the result of the vehicle impact on the building, as he allegedly reported structural problems not caused by the accident to a third party. We hold that that Trinity and the other cases discussed above do not provide blanket immunity for all acts committed by an adjuster or third-party professional retained by an insurer to investigate a claim. Rather, the limited immunity provided in Trinity, which we find generally covers Swain here, does not protect a professional for acts taken unrelated to the claim. See Johnson v. State Farm Fire & Cas. Co., No. CIV-19-250, 2019 WL 5388521, at *4 (N.D. Okla. Oct. 22, 2019) (holding that Trinity did not bar a plaintiff's claim of intentional infliction of emotional distress and specifically noting that, "it seems unlikely that the Oklahoma Supreme Court intended such a sweeping grant of immunity, as it would give adjusters free rein to engage in underhanded tactics during the adjustment process.").

¶18 Based on the pleadings, the plaintiffs alleged that Swain reported structural problems to the city which were not related to the vehicle impact. The petition further alleges that Swain "performed engineering inside his scope of work for the insurance company and outside his scope of work for the insurance company." Doc. 8, Amended Petition, pg. 7. While it appears he was perfectly free to do so, his Trinity-based immunity does not insulate him from any potential harm caused from a tortious report to a party other than the insurer. A motion to dismiss "may not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the stated claim for relief." National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc., 1997 OK 36946 P.2d 662

¶19 Additionally, defendants also argued that plaintiff's claim against Swain individually should be dismissed because his actions were undertaken in his corporate capacity and are shielded from liability pursuant to 12 O.S. § 682

¶20 REVERSED AND REMANDED.

HIXON, J., concurs specially, and HUBER, P.J., dissents.

FOOTNOTES

See Doc. 8, pg. 6. Additionally, the plaintiffs reference a prior bad faith insurance case involving Mr. Swain and Mr. Prather that purportedly led to the alleged hostility in the present case. Doc. 10, pg. 2. Meanwhile, defendants' motion to dismiss does not mention any hostile interaction or relationship between Swain and Prather.

See, e.g., Boston Ave. Mgt., Inc. v. Associated Resources, Inc., 2007 OK 5152 P.3d 880 If the trial court treated the defendants' motion to dismiss as one for summary judgment, it did so in complete silence. See Doc. 12, Order Sustaining Motion of Day Engineering Consultants, LLC and Corbin Swain ("[T]he Court finds the Motion to Dismiss should be and is hereby granted."). Although we do not disagree that the trial court should have treated the motion to dismiss as one for summary judgment (or at least stated why it could not or would not do so), it is clear that the trial court neither invoked the process envisioned by 12 O.S. § 2012

Jonnada are as follows. The plaintiff raised claims against both his insurer and Engineering, Inc., a company that had been retained by the insurer to investigate and evaluate the damage to the plaintiff's home. Id. at *1-2. The court found that the plaintiffs negligence claim against Engineering, Inc. was not supported by Oklahoma law as set forth in Trinity Baptist Church. See id. at *3-4. The court reasoned that although Engineering was a party to a contract with Liberty for engineering services, Engineering had no contract with the plaintiff. Id. at *4. In turn, the plaintiff presented no legal authority that could support a negligence claim against Engineering under Oklahoma law consistent with the allegations of his pleading. Id.

12 O.S. § 682

 

 

HIXON, J., specially concurring:

¶1 I concur with the Majority Opinion but write specially to further address two points: whether we must treat Defendants' Motion to Dismiss as a motion for summary judgment, and whether Defendants were entitled to summary judgment as a result.

¶2 Ordinarily, the trial court should have treated Defendants' Motion to Dismiss as one for summary judgment or should have expressly stated it was not considering the attached evidentiary materials. However, Defendants represented in their Reply in support of the Motion to Dismiss that the parties agreed the issue for the trial court to decide was

simply . . . whether there is a duty of care to Oklahomans by highly skilled professionals rendering engineering opinions during insurance claims. . . . As Plaintiffs have conceded the issue before the Court is limited to whether or not, under Oklahoma law, an insured may assert a negligence claim against an engineer retained by an insurance company to provide an engineering opinion for purposes of adjusting an insurance claim.

¶3 Based on these representations by Defendants to the trial court, (which are repeated in their Response to Plaintiff's Petition in Error), it is reasonable that the trial court would not treat the motion as one for summary judgment. It is also reasonable to conclude in this circumstance that Plaintiff did not have sufficient notice that the matter would be treated as one for summary judgment and opportunity to fully address it before the trial court rendered its order.

¶4 Moreover, this distinction is relevant here only if Defendants demonstrated they were entitled to summary judgment on the entirety of Plaintiff's claims. They did not.

¶5 As the Majority concludes, while Defendants cannot be held liable to Plaintiff for alleged negligence in the scope of their work performed for the insurer, they could potentially be liable for work performed outside the scope of that assignment, if negligent or otherwise tortious. The reason for this rule is that Defendants' duty of care in providing services to an insurer investigating an insurance claim is owed to the insurer who retained them, not the insured Plaintiff. Thus, Defendants cannot be held liable to Plaintiff for breaching their duty of care in a report to or work for the insurer, even if Defendants acted negligently or tortiously. However, Trinity does not foreclose tort liability for a defendant acting outside the scope that work.

¶6 The dissent cautions against the creation of such a "bright line" rule. In my view, the Majority does not create a bright line rule, but merely applies the law to the facts alleged in this case.

¶7 Plaintiff's Amended Petition specifically alleges Defendants performed work both inside and outside the scope of its work for the insurer. Meanwhile, Defendants presented no evidence regarding the scope of Defendants' work for the insurer's investigation. They relied solely on a legal argument that the protection from liability to the insured set forth in Trinity extends to the entirety of Defendants' alleged actions, as long the independent professional was retained or was also performing services for the insurer in handling a claim, which the Majority rejects.

¶8 Thus, even if the trial court did or should have considered the extraneous materials submitted by Defendants, Defendants did not meet their burden to demonstrate they were entitled to judgment in their favor on the entirety of Plaintiff's claims. Regardless of how the motion is treated, I concur that the end result is that the trial court's order must be reversed for the reasons set forth by the Majority.

FOOTNOTES

 policy benefits are received." Newport v. USAA, 2000 OK 59

Tucker v. Cochran Firm-Crim. Def. Birmingham L.L.C., 2014 OK 112341 P.3d 673

 

 

HUBER, P.J., dissenting:

¶1 I respectfully dissent from the Majority's Opinion. Defendants Day Engineering Consultants (Day Engineering) and Corbin Swain (Swain) (collectively Defendants) attached extraneous materials to their motion to dismiss and subsequent reply brief. Plaintiff Glendale Apartments LLC (Glendale Apartments) also attached extraneous materials to its response to the Defendants' motion to dismiss. Both parties referenced these materials in support of the specific issues and associated facts. As a result, I take issue with the Majority's conclusion to treat the motion as a motion to dismiss and not as one for summary judgment.

¶2 As the Majority notes, Section 2012(B) provides that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to the motion by the rules for summary judgment." 12 O.S.2021 § 2012See Knox v. Oklahoma Gas & Elec. Co., 2024 OK 37549 P.3d 1260as corrected (June 6, 2024). ("If exhibits are attached to a 12 O.S.2011, § 2012Patel v. OMH Med. Ctr., Inc., 1999 OK 33987 P.2d 1185dehors the pleadings, it is incumbent upon the trial court to treat the motion as one for summary judgment.") (emphasis in original).

¶3 Here, the record does not demonstrate whether the trial court affirmatively excluded these extraneous materials. The Majority has altered the requirements of Section 2012(B) by substituting silence in place of the explicit requirement that a trial court must make an explicit decision regarding extraneous materials attached to a motion to dismiss. This undermines the proper role of the trial court in handling extraneous materials.

¶4 While the Majority concludes that "[t]he court, in granting the motion to dismiss did not indicate that [it] relied on any of the additional materials," my review of the trial court's order indicates that the trial court did consider the extraneous materials in granting the motion to dismiss. The trial court's order did not limit its review to the allegations in the First Amended Petition, but stated that it "reviewed the briefs submitted by the parties and [heard] arguments of counsel." In light of this, I find it reasonable to conclude that the trial court looked to the extraneous materials, as the "briefs submitted by the parties" contained numerous exhibits.

¶5 I also do not agree that the parties were neither put on notice nor given a reasonable opportunity to present applicable materials pertinent to the motion. Prior to the filing of the motion, the parties litigated this matter for over a year and a half. Defendants alleged seventeen "Relevant Facts" in their motion to dismiss--eight of which were supported by extraneous exhibits. This included deposition testimony and the letter Swain sent to the City of Oklahoma City regarding the apartment building. The Defendants acknowledged that the trial court could treat their motion to dismiss as a motion for summary judgment when they stated in footnote three of their motion to dismiss that "[w]hile Moving Defendants believe there are sufficient grounds to dismiss Plaintiffs' claim for negligence against Moving Defendants based strictly on the allegations set forth in Plaintiffs' First Amended Petition, this Court may also consider the exhibits attached hereto and treat the present motion as a motion for summary judgment." Further, after being given thirty-two days to file a response to the motion to dismiss, Glendale Apartments filed a response with exhibits, including deposition testimony. Finally, in their reply brief, the Defendants attached another exhibit--the report prepared by Defendants regarding the apartment building. Because the trial court made no express finding excluding this material from the parties' briefs, it is my opinion that the parties were given the opportunity to present relevant materials to the motion.

¶6 In contrast to the Majority's conclusion, I would have concluded that the trial court reviewed this material when deciding the motion and would have treated this as a motion for summary judgment on appellate review. In so doing, I would have affirmed the trial court's decision, as I disagree with the Majority's analysis of the Oklahoma Supreme Court's decision in Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC, 2014 OK 106341 P.3d 75

¶7 In Trinity, the Oklahoma Supreme Court held that an independent insurance adjuster hired to investigate a claim owes "no legal duty that would allow [an insured] to recover in tort for any negligence in [the insurance adjuster's] investigation and adjustment of the claim." Trinity, 2014 OK 106

in the context of an insurance claim, it is the insurer that contractually controls the responsibilities of its adjuster and retains the ultimate power to deny coverage or pay a claim. Subjecting adjusters to potential tort liability from insureds could create conflicting loyalties with respect to the adjusters' contractual obligations, given that insureds and insurers often disagree on the extent of coverage or the amount of damages.

Id. ¶ 27, 341 P.3d at 85 (cleaned up). These same conflicts are present involving third party professionals, such as engineers, who are hired by an insurance company to investigate claims. Accordingly, I agree with the Majority's conclusion that Trinity extends to "third-party consultants hired to investigate, evaluate, or otherwise assess damage on behalf of an insurance company." However, I disagree with the Majority's attempt to create a bright-line rule for Trinity's application when it concludes that Trinity "does not protect a professional for acts taken unrelated to the claim."

¶8 My issue with the Majority's conclusion stems from the relationship between an insurer and its insured, which is "governed by the insurance policy and its accompanying implied covenant of good faith and fair dealing." Trinity, 2014 OK 106Id. In my view, the actions of an independent professional that are "unrelated to the claim," could give rise to a claim against an insurer who "is subject to liability for the adjuster's mishandling of claims in actions alleging breach of contract and bad faith." Id. ¶ 30, 341 P.3d at 86. The insurance claims process depends on the facts and circumstances of each case and the particular terms of the insurance policy. Because of the unique factual scenarios of each claim, actions that are "unrelated to a claim" could give rise to a "mishandling of a claim," which would subject an insurer to liability for breach of contract or tort damages if the actions rise to the level of bad faith. See id. ¶ 31, 341 P.3d at 86. Thus, in contrast to the Majority's decision, my application of Trinity would hinge on the facts and circumstances of each case.

¶9 Here, in treating this as a motion for summary judgment, I would have concluded that, under this set of facts, the Defendants owed no duty to Glendale Apartments with respect to their inspection of the apartment complex. Here, the insurance claim involved the damage sustained from an automobile's impact to Building A. The Defendants were asked to inspect that building "to determine the extent of damage, if any, to the building that was attributable to the reported vehicle impact." During the inspection, Swain observed unsafe and dangerous conditions involving Building A, which he then reported to city officials. In turn, the city conducted an inspection of the apartment complex and determined that it should be closed. While the report to the city was not something that was required for the evaluation of the claim, Swain's report was the result of his inspection, which he only undertook because of the insurance claim. In sum, it is my view that Swain's conduct concerned his handling of the claim and that, under Trinity, the Defendants owe no duty to Glendale Apartments. Therefore, I would have affirmed the trial court's decision. For these reasons, I respectfully dissent.

FOOTNOTES

not converted into one for summary judgment." Tucker v. Cochran Firm-Crim. Def. Birmingham L.L.C., 2014 OK 112341 P.3d 673